[No. 3523.]

Robert Jones and Jack Williams v. The State.

Malicious Mischief.— "Article 684 of the Penal Code is designed for the better protection of agriculturists against wanton or reckless depredation of live stock upon their crops, by furnishing to them another and more efficient remedy than a suit for damages." Such is the general principle announced in the case of *Cleaveland* v. *The State,* 8 Texas Ct. App., 44, and it is correct when applied to a proper case. But in view of the facts disclosed in the statement of the case, it cannot be invoked in that class of cases of which the present is an example.

Appeal from the County Court of Falls. Tried below before the Hon. E. C. Stuart, County Judge.

The appellants in this cause were tried by a jury and convicted at the March term, 1885, of the county court of Falls county, of knowingly causing cattle to go upon the inclosed land of G. W. Kinard. The defense was not guilty, and the main issue relied upon for the defense was the permission of the parties in actual possession of the premises to turn in the cattle. From the judgment of the county court which, in accordance with the verdict, assessed against each a fine of $25, both of the defendants appeal.

George Kinard was the first witness for the State. He testified that he was familiar with the premises known as the "Clark farm." Witness owned an undivided interest of four-sevenths in the said farm, a Mrs. Rhodes owned two-sevenths, and a minor named Bud Clark the remaining undivided one-seventh. That farm included from three hundred to three hundred and fifty acres, of which about two hundred acres were cultivated in 1884, the remainder being pasture land. The entire tract was under one common fence. For several years, by mutual agreement, the tillable land had been divided among the said owners for the purpose of cultivation, one hundred and fifteen acres being allotted to witness, and cultivated by him and his tenants, sixty acres to Mrs. Rhodes, and the remainder to the Clark minor. This condition of affairs existed throughout the year 1884. During the year 1884 the witness, under a written contract, leased his interest to Kirchaine & Chambers, of Reagan. The said written contract was left in the possession of the lessees, who, when called upon to produce it, could not find it. No objection being made to parol proof of the contents of the said contract, the witness testified that the document contained no provision against pasturage of stock on the land, but there was a parol agreement to such effect between

the parties to the contract at the time it was entered into. Witness desired to have this agreement embodied in the contract after it was signed, but the lessees remarked that it was unnecessary, and witness submitted.

On the morning of December 22, 1884, witness met the defendants driving about fifteen head of cattle towards the Clark farm, and asked them what they intended to do with the cattle. They replied that they were going to turn them into the Clark farm. Witness objected to this proposed pasturage of the said stock, and remonstrated with the defendants, but they replied that they had the permission of one Don Richardson, a tenant on the farm. Witness then told the defendants that Don Richardson had no authority to give any such permission, and that, if they had any doubt whatever upon that subject, he, witness, would go with them to town and take legal counsel in the matter, and if it should be adverse to him, witness, he would say no more about it, but would submit. This proposition was rejected by the appellants, who, however, said that if witness wanted to, he might consult a lawyer, and if the lawyer decided they had no right, under Richardson's authority, to pasture the cattle on the farm, they would take them out, but in the mean time they were going to put them in that farm. The defendants subsequently admitted to the witness that they turned the cattle on the farm on December 22, 1884, and the witness frequently after that date drove them out.

At the time that these cattle were turned upon the Clark farm, the crops had all been harvested. Witness and Mr. Wyche, who cultivated the Clark minor's interest in the farm, had their cattle pastured upon the land in proportion to their interest therein,— that is, under a mutual agreement, witness pastured thirty head and Mr. Wyche nineteen head. The grass inside the inclosure was very good, while that outside was very scant, and witness wanted to hold his grass in reserve for his winter stock supply. The defendants owned large stock interests on the range. Don Richardson cultivated witness's interest in the land in 1884, under a sublease from Kirchaine & Chambers. Witness was not consulted when this sublease was executed, but raised no objection when he was subsequently informed of it. Don Richardson left the place on December 15, 1884, and when the cattle were turned in on the 22d he was living on the Bennett farm in the same neighborhood. Having had the conversation with the defendants about the pasturage of the cattle on the Clark farm, the witness went direct to Reagan, to see Mr. Kirchaine, one of his original lessees. Kirchaine told witness

that Richardson had harvested the crop and left the place, and that he, Kirchaine, had "no further use for the place — there it is; go and take it." The entire farm was under one common fence, and there were no cross fences dividing the land cultivated by the several owners. The defendants turned the cattle in without the consent of the witness, and they ranged all over the land allotted him, whence he drove them out.

Fred Wyche was the next witness for the State. He testified that, during the year 1884, he lived on the Clark farm. On December 22 of that year, he saw the defendants open the farm gate near Mrs. Rhodes's portion of the ground, and turn in about fifteen head of cattle. They were turned in upon Mrs. Rhodes's portion, but from thence they could range all over the farm. Witness knew that the defendants were going to turn the cattle upon the farm, but, as he did not think he had the authority, he neither objected nor consented.

Isaac Rhodes was the first witness for the defense. He testified that Mrs. Rhodes was his sister-in-law, having married his brother, now deceased. Witness cultivated, during the year 1884, a part of his brother's interest in the Clark farm, and upon the death of his brother in the spring of 1884, by request of his widow, Mrs. Rhodes, witness assumed control and management of, and cultivated that portion allotted to her. Witness was present at the farm gate on December 22, 1884, when defendants turned their cattle upon the farm, and gave them permission to do so. Mrs. Rhodes's assigned interest in the cultivated land was about sixty acres. Fred Wyche had rented the minor Clark's interest from his guardian. G. W. Kinard's interest in the cultivated land was about one hundred and twenty acres. The defendants turned the cattle in at the gate on Mrs. Rhodes's portion, whence they went all over the farm. Witness was living on his sister-in-law's portion of the farm, but owned no cattle. Kinard and Wyche had their cattle pastured upon the farm at the time. The crop had then been harvested.

Don Richardson having testified that he lived on Kinard's portion of the Clark farm during the year 1884, under a sublease from Kirchaine & Chambers of Reagan, it was proposed by the defense to ask him whether or not he consented to the defendants pasturing stock on that farm. The State objected, first, because it was shown that he was a subtenant, and could not, therefore, sublease, and hence, had no authority to consent; and, second, because it had been shown that he had abandoned the premises a week before the commission of the offense. The court sustained the objections.

The motion for new trial questioned the action of the court in admitting certain evidence and rejecting certain other evidence, assailed the charge of the court as incorrect upon various grounds, and denounced the verdict as unsupported either by law or evidence.

*Martin & Dickinson*, for the appellant.    In the first place, Kinard, the complainant, had no such possession of or interest in the land as that a trespass could be committed upon it.    He had parted with his estate for the year 1884, and the lease had not expired nor been surrendered.    It is true he had turned his stock into the farm, but so far as appears he himself was a trespasser, for he says the parol agreement between him and Kirchaine & Chambers was that no stock should be turned into the farm, and when he found the defendants were about driving their cattle upon the land he went to Kirchaine and got a release from him.    But even Kirchaine had parted with his estate, without objection from Kinard, to Richardson, who, although he had moved to a place near by, is not shown to have abandoned or released his estate.

It will be conceded that the statute upon which the prosecution is based has for its object the protection of persons in the actual or constructive possession of inclosures, and that it will not be extended to reversionary estates.    We shall not trouble this court with any reasoning or any authority upon this elementary subject.

And then in the second place, under the circumstances of this case, there was no such severance of the common tenancy in the land that would constitute an entry against the consent of one of the owners a trespass,— nor such a severance that destroyed the incidences of a common tenancy.

The prosecution proceeded upon the idea that the agreement that each owner should cultivate a particular part of the land had the effect of a total severance.    Conceding this, then it would seem, without examining the facts of *Cleaveland* v. *The State*, in the 8th Texas Court of Appeals Reports, there is some authority for the prosecution, if Kinard had been in possession of the premises.    But, without discussing the merits of Cleaveland's case, it is evident that the tenancy in the case at bar was, at the turning in of the cattle, one in common.    This is evidenced first by the condition of the estate and the agreement dividing the land for cultivation.    Nothing was agreed as to the one hundred and fifty acres of pasture, which was in the common inclosure; still, if there was such partition as would subject one of the owners to punishment if he should turn in cattle, when the premises were not being cultivated or after

the crops were gathered, it would make the pasture practically useless. But the agreement as to cultivation, the condition of the estate, and the manner in which the parties treated the matter, show that they intended each to cultivate a portion of the land and then to use it for such common purposes as might be of interest. Otherwise it might be pertinently asked by what authority Kinard, even if he had not leased his interest, turned his cattle upon the land? and by what authority the tenant Wyche turned in his cattle? When the right view is taken of the possessory rights of the parties then the case of *Brumley* v. *The State*, 12 Texas Ct. App., 609, affords a complete answer to the prosecution.

The principle enunciated in that case, and the further question of Kinard's right to complain at all, were urged upon the court by repeated instructions asked, and although the court gave one requested (that all the owners of the land must be shown not to consent), still, when the jury found the defendants guilty directly contrary to this charge and the evidence, the court refused a new trial. We submit the case ought to be dismissed because of the variance between the information and the evidence.

*J. H. Burts*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE. Appellants were convicted upon an information which charged them with unlawfully, wilfully and knowingly causing a large number of cattle, to wit, fifteen head, to go within the inclosed lands of G. W. Kinard, without his consent, etc.; which information is based upon article 684 of the Penal Code.

It is shown by the evidence that the cattle were turned into a field or inclosure of three hundred and fifty acres, inclosed by a single fence. This tract of three hundred and fifty acres was not all owned by Kinard, but was the property of several joint owners, as follows: Kinard, the prosecutor, owned an undivided four-sevenths; a Mrs. Rhodes two-sevenths, and a minor named Clark owned the remaining one-seventh. One hundred and fifty acres of the tract were in pasture, and the remaining two hundred acres, for convenience of cultivation, were divided into lots, and annually cultivated by the owners or their tenants. In the year 1884, Kinard leased his portion; Mrs. Rhodes's interest was cultivated by a Mr. Rhodes, her brother-in-law and agent; and the interest of the minor Clark was cultivated by a tenant named Wyche.

After the crops had all been gathered, the prosecutor, Kinard, and

Wyche, the tenant of the Clark minor, agreed that they had the right to turn so many head of cattle into the inclosure, estimating the number in proportion to the acreage owned or cultivated by them; that is, Wyche was to put in nineteen head, and Kinard thirty head; and, in accordance with said agreement, these parties turned their cattle into said inclosure. Rhodes, who was the agent and tenant of Mrs. Rhodes's interest, was not a party to this agreement, nor is it shown that he turned any of his own or Mrs. Rhodes's cattle into the inclosure. After the other parties, however, had turned their cattle in as per the agreement, Rhodes expressly authorized these appellants to turn in the fifteen head of cattle complained of in this prosecution. These are the facts in brief.

Under such a state of facts it does seem to us that it requires no searching after technical or abstract principles of law to settle this case according to right, justice and reason,— not to say common sense.

If the other parties, independent of legal principles, agreed that they, as owners, could turn in any number of cattle in proportion to their interest, they certainly could not have complained if Mrs. Rhodes should have asserted her right to the same extent; and if Mrs. Rhodes had the right, her agent, acting for her, would have the same right; and if he had the right as to his or her cattle, he could clearly delegate this right to a third party, and under such authority such third party would no more be a trespasser than would Mrs. Rhodes herself or her agent have been.

As was stated in *Cleaveland* v. *The State*, 8 Texas Ct. App., 44, the obvious purpose and intention of article 684, Penal Code, was, as expressed in the title of the original act from which it was taken, "to better provide for the protection of agricultural interests," and to provide a penal remedy "for that character of trespass, in addition to a civil action for damages, which for obvious reasons might often prove inadequate. The mischief designed to be remedied was the wanton or reckless depredations upon crops by stock, caused frequently by irresponsible parties who were not able to respond in damages, and to prevent the loss in a few hours of the fruits of a year's labor."

We do not controvert or deny the general legal principles announced in Cleaveland's case. They are undoubtedly correct when they are applied to a state of facts to which they are applicable; but they cannot be made to apply to the facts of this case, as shown above. It would be most inequitable and unjust to hold that Kinard's separate parcel of this land should be treated as sacred as if it

were his separately inclosed land, when he was at the time treating the Rhodes interest as common property. The question is: Were appellants trespassers? If not, then they are not guilty of a violation of the law. They cannot be considered as trespassers if Rhodes could confer authority upon them to do what they did. That he had authority equal to Kinard or Wyche cannot be denied. If he had such authority, then, if these parties are guilty, Kinard and Wyche are equally guilty, and have no right to complain.

The case of *Coggins* v. *The State* is very similar to this in principle. (See 12 Texas Ct. App., 109.) There was no contract previously existing between the parties, or any of them, that cattle should not be turned into and grazed upon the land. The very opposite was the fact as to the agreement between Kinard and Wyche.

Under the peculiar facts of this case we cannot believe that appellants are guilty of any offense; wherefore the judgment is reversed and the case is remanded.

*Reversed and remanded.*

[Opinion delivered June 6, 1885.]